## BOOTH *against* STARR and others.

Where there have been several conveyances of land with covenants of warranty, and an eviction of the last covenantee, an intermediate covenantee who has not been damnified, is not entitled to recover against a prior covenantor.

THIS was a petition in chancery, brought to the superior court in *Fairfield* county. The facts stated in the petition, and found by the court, were these. *John Booth* in 1795, conveyed a lot of land in *Hudson* to *Stephen Booth*, the petitioner, with the usual covenants of warranty and seisin. In 1802, the petitioner conveyed the premises to one *McKinstry*; *McKinstry* afterwards conveyed to one *Seymour*; he conveyed to *Thomas Williams*; and he conveyed to *Elisha Williams*, Esq.; there being in each of the deeds the same covenants as in the deed first mentioned. At the time *John Booth* conveyed the premises, he was not the owner thereof in fee, but the title was in one *Lucy Starr*, who has since entered and evicted the last grantee; but the petitioner has not been damnified. The respondents are

the administrators of the estate, and the heir at law, of *John Booth,* now deceased, and have his effects in their hands.   Upon these facts the respondents contended, that the petitioner was not entitled to recover.   But the court decided otherwise, and decreed the payment of the sum of 2340 dollars to the petitioner, as damages sustained by him by reason of the aforesaid breach of covenant.

*New-Haven,*
November,
1814.

Booth
*v.*
Starr
and others.

The respondents moved for a new trial, on the ground that the court mistook the law in making such decree.   The question of law arising on the motion was reserved for the consideration of all the Judges.

*N. Smith* and *Bristol,* in support of the motion, contended, that the covenant of warranty is annexed to the land, and passes with the land to heirs and assignees, vesting in them the whole legal interest, and not a mere equitable title. In the present case, when *Stephen Booth* conveyed to *McKinstry,* the covenant of *John Booth* passed at the same time, and *Stephen Booth* ceased to have any legal interest in the warranty.   It follows, of course, that he cannot sue on such warranty until he has been damnified, and thereby reinvested with his original right.   1 *Chitt. Plead.* 3, 11.   *Shep. Touch.* 198.   *Co. Litt.* 384. *b.*   *Spencer's* case, 5 *Co.* 17, 18.   *Bull. N. P.* 158, 9.   *Com. Dig. tit.* Covenant, (B 3.)   *Beely* v. *Purry,* 3 *Lev.* 154.   *Walker's* case, 3 *Co.* 22. *b.* 23. *a. b. Com. Dig. tit.* Debt, (D.)   *Waldron* v. *McCarty,* 3 *Johns. Rep.* 471.   *Kortz* v. *Carpenter,* 5 *Johns. Rep.* 120.

*R. M. Sherman,* contra, insisted that though a right of action passes with the land to the assignee, yet the *privity of contract* remains with the grantor, and he may bring *warrantia chartæ* immediately after eviction of the tenant, without waiting for an action to be brought against him. *Jacob's Law Dict. tit.* Warrantia Chartæ.   *Fitzherb. Nat. Brev.* 298, 9.   *Griffith* v. *Harrison,* 1 *Salk.* 196, 7.   *Abbots* v. *Johnson,* 3 *Bulstr.* 233. *Broughton's* case, 5 *Co.* 24. 1 *Saund.* 241. c. (*Wms.* edit.)   *Filly* v. *Brace,* 1 *Root* 507.   *Bickford* v. *Page,* 2 *Mass. Rep.* 455, 459.

SWIFT, J.   The question is, whether in the case of a covenant of warranty annexed to lands, an intermediate covenantee can maintain an action against a prior covenan-

Booth
v.
Starr
and others.

tor without having been sued by, or satisfied the damages to, the last covenantee, who has been evicted.

A covenant real is annexed to some estate in land ; it runs with the land, and binds not only heirs and executors, but assignees. Every assignee may, for a breach of such covenant, maintain an action against all or any of the prior warrantors, till he has obtained satisfaction. This results from the nature of the covenant ; for each covenantor covenants with the covenantee and his assigns ; and as the lands are transferrable, it was reasonable that covenants annexed to them should be transferred.

As every covenantor in the various conveyances becomes liable for a breach of covenant to his covenantee and his assignees, it follows of course, that notwithstanding his conveyance of the land, he must, when subjected to pay damages for a breach of the covenant to his covenantee or his assignee, have a right of action for indemnity against his covenantor. This demonstrates that the rights and liabilities of the various parties to a covenant real continue notwithstanding a conveyance of the land to which it is attached ; and that any of them can sustain a proper action when injured by a breach of it.

It has been contended, that a covenant real, like the land, passes by the assignment of the land from the grantor to the grantee, and is thereby extinguished, and the grantor divested of it, so that he can maintain no action for a breach subsequent to the assignment ; though it is conceded, that the covenant is revived in favour of the assignor by satisfying the damages for a breach of it. But the grantor does not become totally divested of the covenant by a grant of the land. By the conveyance of the estate, the grantee becomes entitled as assignee to the benefit of the covenants annexed to the land against his grantor, and all prior grantors ; but this does not take away the right which his immediate grantor had to look to his grantor, and all prior grantors for indemnity, in case of a breach of the covenant subsequent to the assignment, for which he is liable to pay damages. It cannot be said, that the covenant is extinguished by the assignment of the land, and then revived by being subjected to pay damages for a breach of it. If the covenant be once extinguished, it cannot be revived without the consent of both parties ; and the circumstance that the

assignor on being compelled to pay damages for a breach of
it to a subsequent assignee may maintain an action against
his assignor, proves that the contract continued in force, and
did not become extinguished by operation of the assignment.

New-Haven,
November,
1814.

Booth
v.
Starr
and others.

To prove that the assignor cannot sue for a subsequent
breach 1 *Chitty on Pleadings* 10. has been relied on ; where
it is said, an assignor cannot sue for a subsequent breach of
a covenant running with an estate in lands, but the assignee
must sue.   This doctrine cannot be true to the extent con-
tended for ; as it would prove, that the assignor, after hav-
ing paid the damages to his assignee, could not call on his
assignor ; though it is conceded in such case he could main-
tain an action.   But to understand the meaning of *Chitty*,
we must examine the authority to which he refers, 1 *Saund.*
241. c. (*Wms.* edit.)   It is there stated, " That the lessor
cannot maintain an action of covenant after he has parted
with the reversion for any breach of covenant accruing sub-
sequent to the grant of the reversion ; for the statute of
*Hen.* 8. has transferred the privity of contract, together
with the estate in the land, to the assignee of the reversion."
Thus, if one should lease land, and the lessee covenant to
pay rent, or do particular acts on the land, and the lessor
assign his interest in the reversion, then the statute of 32
*Hen.* 8. transfers the privity of contract, and the assignee
of the reversion only can maintain an action against the
lessee for a breach of his covenant subsequent to the assign-
ment ; for he has the privity of contract and estate, and he
only can be damnified by the breach of covenant on the part
of the lessee.   But suppose a lessor makes a lease with
covenant of warranty ; and the lessee assigns his interest
in the estate ; after which his assignee is evicted and recov-
ers damages against him for the breach of the covenant of
warranty ; it will not be pretended that in this case, the
lessee, who has now assumed the character of assignor,
cannot maintain an action against his lessor on the covenant
of warranty, though the breach happened subsequent to the
assignment.   The case there stated in 1 *Saund.* 241. c. must
have related to covenants to be performed by the lessee, and
must be understood to mean, that the lessor cannot bring
an action of covenant *against the lessee* after he has parted
with the reversion for any breach of covenant accruing
subsequent to the assignment ; which is a correct principle.

*New-Haven,*
November,
1814.

Booth
*v.*
Starr
and others.

It cannot mean that an assignor cannot sue for a subsequent breach ; for this in many instances cannot be correct. The authority then relied on has no application to the point in dispute ; and I apprehend the position is undeniable, that in all cases where there have been sundry conveyances of land, with covenants real annexed to them, all the covenants between each party continue operative notwithstanding such conveyance, and every one when damnified can maintain an action.

In the present case, the grantee or covenantee of the plaintiff has been evicted ; but the plaintiff has never been sued, nor has he paid the damages. The question is, whether under these circumstances, he can maintain this action against the defendant, who is his immediate covenantor.

The last assignee can never maintain an action on the covenant of warranty till he has been evicted. Though the title may be defective ; though he may be constantly liable to be evicted ; though his warrantor may be in doubtful circumstances ; yet he can bring no action on the covenant till he is actually evicted ; for till then, there has been no breach of the covenant, no damage sustained. By a parity of reason, the intermediate covenantees can have no right of action against their covenantors, till something has been done equivalent to an eviction ; for till then they have sustained no damage. As the last assignee has his election to sue all or any of the covenantors, as a recovery and satisfaction by an intermediate covenantee against a prior covenantor would not bar a suit by a subsequent assignee, such intermediate assignee ought not to be allowed to sustain his action till he has satisfied the subsequent assignee ; for otherwise every intermediate covenantee might sue the first covenantor ; one suit would be no bar to another ; they might all recover judgment, and obtain satisfaction ; so that a man might be liable to sundry suits for the same thing, and be compelled to pay damages to sundry different covenantees for the same breach of covenant. In the present case, the plaintiff cannot know that his covenantee who has been evicted will ever sue him ; he may bring his action directly against the defendant ; a recovery in this suit, and payment of the damages, would be no bar ; the defendant could then have no remedy but by petition for new trial ; and if the plaintiff in the mean time should become unable to refund the money, the defendant would, by operation of

New-Haven,
November,
1814.

Booth
v.
Starr
and others.

law, be compelled to pay the same demand twice, without redress. But if the principle is adopted that the intermediate covenantee can never sue till he has satisfied the damages, no such injustice can ensue.

The subject may be considered in another view. In all these cases it is the duty of the first covenantor to make good the damages for a breach of the covenant, and to indemnify all the subsequent covenantees. Each subsequent covenantor is liable to all the subsequent covenantees, and on paying the damages will have a claim for indemnity against a prior covenantor. The nature then of the engagement of the first covenantor is to indemnify all the subsequent covenantees from all damages arising from his breach of the covenant.

It may be proper, then, to examine what is necessary to give the surety a right of action against the principal. It would seem to be a clear dictate of reason, that the mere liability to pay money for another, he continuing liable to pay the money himself, can never be a cause of action on the contract of indemnity ; for it is uncertain whether the surety will ever be compelled to pay, and the principal may pay himself. Such uncertainty can be no ground of action. It is not necessary that actual payment should be made. If a suit should be brought, judgment rendered, or the person imprisoned, it will be sufficient ; but mere liability, without any damage, is not. On this point no doubt could be entertained were it not for the decision in the case of *Filly* v. *Brace,* 1 *Root* 507. where it is distinctly laid down, that mere liability, without any damage, is sufficient cause of action.

In examining this question it may be premised, that there is a difference between a contract to discharge or acquit from a debt, and one to discharge or acquit from the damages by reason of it. Where the condition of the contract is to discharge or acquit the plaintiff from a bond or other particular thing, then unless this be done, the defendant is liable from the nature of the contract, though the plaintiff has not paid. But if it be to discharge or acquit the plaintiff from any damage by reason of such land or particular thing, then it is a condition to indemnify and save harmless. 1 *Saund.* 117. *n.* (1). (*Wms.* edit.) In the case of *Filly* v. *Brace,* much reliance is placed on cases of actions sustained by sheriffs for escapes when they had not paid the debt to the creditor. The ground is assumed, that the liability of the

*New-Haven,*
November,
1814.

Booth
*v.*
Starr
and others.

sheriff to pay the debt gives the right of action; but this is an erroneous assumption. The wrong done by the escape itself furnishes a cause of action. The sheriff would be entitled to recover, admitting he was not liable to the creditor. Suppose an escape, and before suit brought the debtor escaping pays the debt to the creditor; this would be no bar to an action; for by the wrongful act of the escape, a right of action accrued to the sheriff, which cannot be discharged without his concurrence; and the payment of the debt to the creditor could only go in mitigation of damages.

The case of *Griffith* v. *Harrison,* 1 *Salk.* 197. is also cited. That was a covenant to be discharged and indemnified from all arrears of rent; and the breach alleged was, that rent was in arrear. The court determined the declaration to be bad, because rent remaining in arrear and not paid, is not a damage, unless the plaintiff be sued or charged; and if paid at any time before such damage incurred by the plaintiff, it is sufficient. This is an unanswerable and conclusive authority to disprove the doctrine it is adduced to maintain. Here the liability to pay the rent is acknowledged; and the court say, it is not a damage, unless the plaintiff be sued or charged; and if paid at any time before, it is sufficient. So it may be said in the case of *Filly* v. *Brace,* the debt remaining unpaid is not a damage, unless the plaintiff be sued or charged; if the defendant pays it any time before the plaintiff is sued, he is not liable.

But the court do not seem to rely upon the principle point decided in that case, but on a *dictum* contained in the report. It is there said, that where the counter bond or covenant is given to save harmless from a penal bond before the condition is broken, then if the penal sum be not paid at the day, and so the condition not preserved, the party to be saved harmless does by this become liable to the penalty, and so is damnified, and the counter bond forfeited. This is the precise principle decided in the case of *Abbots* v. *Johnson,* 3 *Bulstr.* 233. cited in the case of *Filly* v. *Brace,* as proving the doctrine that mere liability is a ground of action. As these two cases contain but one decision which is reported at large in *Bulstrode,* I will examine that authority, and see whether it support the doctrine for which it was cited. That was an action of debt on an obligation, and the case was, the plaintiff was bound in a bond with the defendant for payment of

*New-Haven*,
November,
1814.

Booth
*v.*
Starr
and others.

money on a day to come, and had a counter bond from the defendant for saving him harmless. The defendant paid not the money at the day. Upon this his default, the plaintiff brought his action on the counter bond. To this the defendant pleaded *non damnificatus*. The plaintiff replied, shewing all this matter, and that he requested the defendant to pay this money, which he did not do ; on which there was a demurrer. And the question was, whether this non-payment of the money at the day by the defendant be a present forfeiture of the counter bond, without other damage. The court decided, that the failure of payment at the day by the defendant, by which he put the plaintiff in danger of being arrested, was a damnification to him, and a present breach of the condition, and a forfeiture of the counter bond. Here it must be noted, that there was a bond conditioned to pay money at a future day ; and the ground of the decision is, not the liability, but the failure of paying the money. When the plaintiff gave the penal bond with the defendant payable at a future time, no liability to be sued, or to pay the penalty, existed. When the counter bond was taken to save him harmless, it was in effect an engagement that he should never be liable to pay the money, or be subjected to the penalty. The failure to pay the money on the bond by the day rendered the plaintiff liable to pay the penalty ; and this was a present breach of the condition of the counter bond ; for by the non-payment of the money, a liability accrued which did not before exist, and this very liability arising from the failure of paying the money at the day, was the ground of sustaining the action. This is very far from proving, that where there is a contract to save harmless from an existing liability, such liability is a ground of action. Indeed, the fair inference is, that such liability is not to be deemed a ground of action from the circumstance that the court considers the failure of paying the money at the day as the forfeiture of the counter bond. I apprehend no authority can be found, that will support the doctrine laid down in *Filly* v. *Brace ;* and the cases cited in favour of it, directly disprove it.

But let us examine this question on principle. What is the nature of the contract to indemnify and save harmless? It is not that the plaintiff shall never be liable. The existence of the liability is the ground of the contract ; and the object of it is to make good to the plaintiff any damage he may suffer by reason of it. This liability against the con-

New-Haven,
November,
1814.

Booth
v.
Starr
and others.

sequences of which the contract is to indemnify, cannot be a breach of the contract itself. There must be actual damage arising from it to constitute a breach according to the terms of it. If liability without damage be a cause of action, then the contract is broken the moment it is made ; and the defendant may be sued. He may be subjected to pay it to his surety ; and as this will be no bar to a suit by the creditor, he may be compelled to pay it again, and then seek his remedy against the surety. The law will not countenance such absurdity and injustice. Nor is there any danger from delay to the surety ; for if he suspects that the principal is in doubtful circumstances, he may at any time satisfy the demand ; and then he has a clear right of action on the contract of indemnity.

This point is equally clear on authority. In all cases where the condition of the bond or contract is to indemnify and save harmless, the proper plea is *non damnificatus*. The defendant may say, that the plaintiff has not been damnified ; and then it is necessary for the plaintiff to reply and shew the damage to entitle him to recover. This incontestibly proves that liability is not a ground of action ; for the plea admits the existence of the liability, and denies the damage ; and the reply setting forth the damage shews it to be necessary to constitute a ground of action. Suppose to the plea of *non damnificatus*, the plaintiff should reply the liability only ? Will any lawyer say, that such reply is good ? If not, the consequence is, that something more than liability must be shewn ; and this must always be actual damage.

In this opinion the other Judges severally concurred.

New trial to be granted.