## MORROW *v.* BAIRD.

### (*Nashville.* December Term, 1904.)

1. **COVENANTS.** General warranty of title. Runs with land.
   Doctrine reaffirmed.
   The doctrine is well settled in this State that a covenant of general warranty of title runs with the land, and consequently any subsequent vendee who is evicted may sue for the breach.

   Cases cited and approved: Hopkins v. Lane, 9 Yerg., 79; Lawrence v. Senter, 4 Sneed, 53; Kenney v. Norton, 10 Heisk., 384; Mette v. Dow, 9 Lea, 96.

2. **SAME.** Same. Intermediate vendor may maintain action against his vendor, if forced to discharge liability to his vendee.
   An intermediate vendor, who has been forced to discharge his liability to his vendee, evicted by paramount title, may maintain an action for reimbursement against his vendor, whose deed to him also contains a general warranty of title.

   Cases cited and approved: Allen v. Little, 36 Me., 170; Van Court v. Moore, 26 Mo., 98; Booth v. Starr, 1 Conn., 244; Withy v. Mumford, 5 Cow. (N. Y.), 137; Thompson v. Shattuck, 2 Metc., (Mass.), 618; Suydam v. Jones, 10 Wend., 184; Thompson v. Sanders, 5 T. B. Mon., 357; Redwine v. Brown, 10 Ga., 311.

3. **SAME.** Same. Eviction necessary to maintain action, but may be implied and not actual.
   The covenant of warranty is not broken without eviction by paramount title, but eviction by judgment at law is not necessary. The warrantee may voluntarily yield possession to him who has a better title and sue his warrantor for a breach of the covenant; but in such case he does so at his peril, and the burden of proof is upon him to show the paramount title.

   Case cited and approved: Callis v. Cogbill, 9 Lea, 139.

Morrow v. Baird.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.
—JOHN ALLISON, Chancellor.

GEO. E. BANKS, T. A. EMBRY and W. H. WILLIAMSON,
for Morrow.

ZARECOR & TURLEY for Baird.

MR. JUSTICE M'ALISTER delivered the opinion of the
Court.

This is a bill by an intermediate vendor of land
against his immediate grantor for breach of covenant of
title. A demurrer was interposed on behalf of the de-
fendant, which was sustained by the chancellor, and
complainant's bill dismissed. The cause is before this
court on appeal of the complainant, assigning the action
of the chancellor in dismissing his bill as error.

Complainant, Morrow, alleges in his bill that on the
22d day of June, 1888, he purchased of defendant, Baird,
for the consideration of $5,000, a tract of land in Frank-
lin county, Tennessee, estimated to contain 5,000 acres.
Baird executed to Morrow a deed, which was duly ac-
knowledged and recorded in the register's office of

Franklin county. The deed contained a covenant to warrant and defend the title to the tract of land to complainant, his heirs and assigns, against the lawful claims of all persons whomsoever.

On the 12th day of July, 1894, complainant, Morrow, sold the land to John T. Long, and covenanted in his deed to warrant the title to the same. On the 28th of October, 1897, while John T. Long was in possession of said land, Albert H. Sears filed a bill in the chancery court of Franklin county enjoining the said John T. Long from entering upon or cutting the timber on 219 acres of said land. The bill alleges that said suit was prosecuted to a final decree, and that Sears recovered of Long 219 acres of the tract of land which complainant, Morrow, had purchased from defendant, Baird, and which complainant, Morrow, had conveyed by warranty deed to the said Long.

It is further alleged in the bill that one Isaac Gray, while said Long was in possession of the land, filed a bill against him in the chancery court of Franklin county, seeking to recover 450 acres of land which had been conveyed by the complainant, Morrow, to the said Long, and that upon Gray showing superior title to the land claimed by him the said Long, complainant's vendee, purchased from said Gray the 450 acres at the price of $450, and was also forced to pay the costs of Gray against Long, the money being paid on June 8, 1898, viz., $450 for the said 450 acres of land, plus $17.40, the costs of the cause.

It is further alleged that thereafter, on the 4th day of March, 1899, complainant's vendee, Long, filed a bill in the chancery court of Franklin county enjoining complainant, Morrow, from proceeding to collect the purchase money notes which had been executed by Long to complainant, Morrow, for the land which the latter had sold to the former. Complainant, Morrow, answered said bill and filed a cross bill seeking to collect from Long the purchase money notes which Long had executed to him. In that case on the final hearing Long recovered of complainant, Morrow, the price which he had agreed to pay for the 450 and 219 acres lost by the superior title of Sears and Gray, respectively.

The allegations of the bill, when laid in a narrow compass, are that on the 28th day of June, 1888, Baird sold and conveyed the land in controversy by warranty deed to the complainant Morrow. The latter, on the 12th of July, 1894, by warranty deed, sold and conveyed the land to John T. Long. In October, 1897, one Albert H. Sears established by a bill in equity a superior title to 219 acres of this land, and Long was thereby forced to pay the real owner the value of the land so recovered. Subsequently one Isaac Gray brought suit against Long to recover 450 acres of the land so conveyed, and upon his showing a superior title Long purchased his interest. Morrow was then forced to reimburse Long for the land he had lost on account of the superior titles of Sears and Gray. Morrow now sues Baird, his vendor, for breach of warranty of title, and to recover the money

so paid to Long. As already stated, a demurrer to this bill was interposed on behalf of the defendant Baird, assigning for cause:

(1) That the bill shows the breach of covenant for which suit is brought was in the time of complainant's vendee, John T. Long, and complainant cannot therefore maintain this action.

(2) It does not appear from the bill that complainant, Morrow, had discharged his liability to his vendee, Long.

(3) Defendant demurs to so much and such parts of the bill as seeks to recover for the 450 acres of land alleged to have been lost upon eviction by paramount title.

The chancellor sustained the demurrer, and dismissed the complainant's bill, as already stated. Complainant appealed, and has assigned errors. The cause is heard directly by this court without the intervention of the court of chancery appeals, under a new rule, which excludes from the assignment of equity causes to the court of chancery appeals all cases standing on bill and demurrer.

The first assignment is that the chancellor erred (1) in holding that an evicted grantor cannot recover for a breach of covenant warranty, notwithstanding the fact that he, before bringing the suit, discharged his liability to his grantee; (2) In holding that an action cannot be maintained upon a covenant of general warranty to recover damages accruing on account of an eviction by paramount title; (3) in holding that complainant had not discharged his liability to his vendee.

The main contention presented by the demurrer is that the right of action for the breach of warranty of title is in the grantee during whose time the breach occurred, and that it is not competent for an intermediate grantee who has aliened the land to maintain the action.

The question presented is one of first impression in this State, so far as any reported opinion of this court shows. The industry of counsel and our own examination has failed to find any adjudication by this court on the precise question here presented.

The doctrine is well settled in this state that covenant of general warranty of title runs with the land, and consequently any subsequent vendee who is evicted may sue for the breach. *Hopkins* v. *Lane,* 9 Yerg., 79; *Kenney* v. *Norton,* 10 Heisk., 384; *Mette* v. *Dow,* 9 Lea, 96.

In *Kenney* v. *Norton,* supra, it was said that when one purchases land and receives a conveyance for the same he thereby becomes assignee by virtue of the conveyance merely of the warranty of title contained in the deed to his vendor, and that he may sue for breach thereof, whether made to such previous vendor and assigns or not, and that, as the covenant relates to the land, he only who is owner of the land at the time of the breach can take advantage of it. The court continues: "That is to say, in the language of Mr. Rawle, in his work on Covenants for Title, p. 335: 'The owner of the land for the time being is entitled to the benefit of all the warranties and covenants which the prior owner in the claim

of title may have given.' " Or, in other words, in cases of successive warranties of title to land, the last vendee with warranty may maintain an action for breach of covenant against the first or any other warrantor. *Lawrence* v. *Senter,* 4 Sneed, 53; *Mette* v. *Dow,* 9 Lea, 97.

But in these cases the action for breach of warranty was brought by the vendee in possession of the land at the time the breach occurred. The question with which we are now dealing was not adjudicated. The question is whether an intermediate vendor, who has been forced to discharge his liability to his vendee evicted by paramount title, may maintain an action against his vendor for reimbursement.

We are of opinion that such an action may be maintained, and that the chancellor was in error in sustaining the demurrer of the defendant.

Mr. Rawle, in his work on Covenants for Title, section 215, says:

"It may therefore be considered as settled in accordance with principle and authority that where one has parted with all his interest in land he parts also with all right to or control over the covenants which run with it, and he can only regain that right over them by being made liable upon his own covenants and satisfying that liability;" citing *Allen* v. *Little,* 36 Me., 170; *Van Court* v. *Moore,* 26 Mo., 98.

The author cites the leading case of *Booth* v. *Starr,* decided in Connecticut in 1814 (1 Conn., 244, 6 Am. Dec., 233), wherein it was held that the right of action

Morrow v. Baird.

of an immediate purchaser who had himself parted with all interest in the land did not depend merely upon his prospective liability to the purchaser from himself, but that it could not be enforced until that liability should have been fixed by the recovery of damages by them and their actual payment by him.

In the present case, said Swift, J., delivering the opinion of the court:

"The grantee or covenantee of the plaintiff has been evicted; but plaintiff has never been sued, nor has he paid the damages. The question is whether, under these circumstances, he can maintain the action against the defendant, who is his immediate covenantor. The last assignee can never maintain an action on covenant of warranty till he has been evicted. Though the title may be defective, though he may be constantly liable to be evicted, though his warrantor may be in doubtful circumstances, yet he can bring no action on the covenant till he is actually evicted, for till then there has been no breach of the covenant, no damage sustained. By a parity of reasoning, the intermediate covenantees can have no right of action against their covenantors till something has been done equivalent to an eviction; for till then, they have sustained no damage. . . . In the present case the plaintiff cannot know that his covenantee, who has been evicted, will ever sue him. He may bring his action directly against the defendant. A recovery in this suit and payment of damages will be no bar."

The case of *Booth* v. *Starr* was cited and quoted with approbation in the subsequent case of *Withy* v. *Mumford,* 5 Cow. (N. Y.), 137. The reason of the rule seems to be to prevent the obvious injustice which would arise from making prior vendors liable to all the subsequent owners in turn, and thus pay damages more than once for the same breach of covenant. The principle that the intermediate covenantee can never sue till he has satisfied the damages was adopted to prevent such an injustice.

Mr. Washburn, in his work on Real Property, vol. 3, p. 503, recognizes the general rule that action for breach of covenant of warranty of title should be brought by the owner of the land, and as such the assignee of the covenant at the time it is broken. The author states, however, "that an exception as to who may sue for a covenant of warranty exists where the covenantee has himself conveyed the premises with warranty, and his grantee, upon being evicted, sues and recovers of him, instead of suing the original covenantor, as he might have done. In such case the first covenantee, upon satisfying the claim of the second, is remitted to his claim against his covenantor upon the original covenant. And this would be true if there had been a succession of conveyances with warranty on the part of any one or more of the successive grantors. The tenant who is evicted may, in such case, sue any prior covenantor; and if he elects any one but the first, and obtains satisfaction for his claim, such covenantor may thereby stand as to any prior cov-

enantor in the place he held before he had parted with the estate, and sue upon his covenant, as if the breach had occurred during his ownership."

The author cites in support of the text *Withy* v. *Mumford,* 5 Cow. (N. Y.), 137; *Thompson* v. *Shattuck,* 2 Metc. (Mass.), 618; *Suydam* v. *Jones,* 10 Wend., 184, 25 Am. Dec., 552; *Thompson* v. *Sanders,* 5 T. B. Mon., 357; *Booth* v. *Starr,* 1 Conn., 244-249, 6 Am. Dec., 233; *Redwine* v. *Brown,* 10 Ga., 311-317.

It is insisted, however, that it does not appear from the bill that complainant, Morrow, has discharged his liability to his vendee, Long. It is distinctly alleged in the bill that in a litigation between Morrow and Long the latter recovered of complainant the price which he had agreed to pay for the 450 and 219 acres above mentioned. We infer from this language that said claim has been satisfied.

The third ground of demurrer was to so much of the bill as sought to recover for the 450 acres of land alleged to have been lost to Gray, because it did not appear that such loss was upon eviction by paramount title.

It is alleged in the bill that one Isaac Gray filed a bill against complainant's vendee, Long, to recover 450 acres of land embraced in the deed from Baird to complainant, and that, upon Gray showing a superior title to the land, complainant's vendee, Long, purchased it for the consideration of $450.

In *Callis* v. *Cogbill,* 9 Lea, 139, this court said:

114 Tenn—36

"While the general rule requiring an eviction has always been held in Tennessee, the principle has been extended to implied or legal evictions, and is not confined to literal and actual dispossession;" citing with approval Wait's Actions and Defenses, vol. 2, p. 389, wherein it is said: "Although the covenant of warranty is not broken without eviction by paramount title, yet eviction by judgment at law is not necessary. The tenant may voluntary yield the possession to him who has a better title, and claim for a breach of the covenant."

It was further said in *Callis* v. *Cogbill* that: "The rule is founded on the sound principle that the vendor, having himself parted with the possession, and put his vendee in his place, he is bound to his warrantor in good faith to retain that possession which may *ripen into a perfect title*, except as against a paramount title shown to exist, and if he surrenders the possession he must be prepared to justify such surrender by clearly making out the fact authorizing his act."

For the reasons indicated, the decree of the chancellor is reversed, the demurrer overruled, and the cause remanded for an answer.